IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>WILDRIAN JOSE BAPTISTA CACERES,<br><br>Defendant. | **8:26CR25**<br><br><br>**ORDER OF DETENTION** |

On July 16, 2026, this matter came before the court for a detention hearing pursuant to 18 U.S.C. §3142(f)(2) and Defendant's Motion for Release (Filing No. 105).[1] Defendant was present with his counsel appearing by video. Without objection, the court took judicial notice of documents contained in the court file, including the Superseding Indictment (Filing No. 54), the Amended Criminal Cover Sheet (Filing No. 59), and the Pretrial Services Report (Filing No. 93). For the reasons noted on the record and as set forth herein, the court grants the Government's oral motion for detention and denies Defendant's motion for release.

1. **Background**

Defendant and numerous other co-defendants are charged with participating in a largescale multistate conspiracy to deploy malware and steal significant sums of money from ATM machines, commonly described as "ATM jackpotting." (Filing No. 54). The Superseding Indictment charges Defendant with Conspiracy to Commit Bank Fraud and Conspiracy to Commit Bank Burglary and Fraud and Related Activity in Connection with Computers. If convicted, the potential penalties include up to thirty years of imprisonment on the first charge, and up to five years of imprisonment on the second charge, as well as potential fines and periods of supervised release.

The Government alleges in the Superseding Indictment that Defendant and other members of the conspiracy "committed or attempted to commit at least 58 ATM jackpottings of the Victim Banks. Between in or around January 2024 and in or around February 2026, the defendants and

---

[1] The motion and brief were combined. For future reference, NECrimR 12.3(b)(1) requires that a motion raising a substantial issue of law must be supported by a brief, to be filed separate from, and not attached to or incorporated in the motion.

other members of the conspiracy committed or attempted to commit at least 44 ATM jackpottings of the Vitim Credit Unions." (Filing No. 54 at 3-4). The Government seeks forfeiture and alleges that the "overall loss to the Victim Financial Institutions was at least approximately $6,126,321.00 and at least an additional $1,750,807.74 was attempted." It further alleges the defendants who participated were permitted to keep a percentage of the proceeds. (Filing No. 54 at 4).

The Government moved for detention, arguing that Defendant poses both a risk of flight and a risk of danger to the community. Defendant opposed the request, arguing that the Government is not entitled to a detention hearing because there is no evidence he poses a serious risk of flight under 18 U.S.C. §3142(f)(2)(A). Defendant in particular asks the court to consider only that Immigration and Customs Enforcement (ICE) has issued an immigration detainer, indicating that he will be taken into ICE custody if released and therefore cannot pose a serious flight risk. (Filing No. 105 at 1-2).

## 2. The Bail Reform Act

The standards governing pretrial release or detention are well-established under the Bail Reform Act, 18 U.S.C. §3142. The statute of course begins with a strong presumption of release. *Id.* at §3142(b). The Act applies "to all persons charged with a federal crime, regardless of immigration status." *United States v. Solis*, 453 F.Supp.3d 1161, 1165 (S.D. Iowa, 2020). Nothing in the Act authorizes the automatic detention of alien persons pending trial, including those facing an immigration detainer. The court must instead "conduct an individualized analysis of a defendant when deciding whether pretrial release on conditions or detention would be appropriate." *Id.* (internal quotation and citation omitted); *see also United States v. Lozano-Miranda*, 2009 WL 113407, at *3 (D. Kan., Jan. 15, 2009) (noting that while an immigration detainer alone does not mandate detention, it is a factor to consider when evaluating a risk of flight).

The initial determination under the Act must be whether the matter should proceed to a detention hearing. While some criminal offenses automatically qualify for a hearing given the nature of the crimes charged (think guns, drugs, crimes of violence, and offenses against minor children), others do not. For those, the court may only grant the government's motion for a detention hearing (or order one on the court's own motion) if the defendant poses a serious risk of flight or if he poses a serious risk of obstruction or intimidation. *See* 18 U.S.C. §3142(f)(2)(A) and

2

(B). There appears to be little authority in the Eighth Circuit concerning this initial analysis, but other courts have addressed the issue in more detail.

When considering whether an individual poses a "serious risk of flight," the analysis should be based on a totality of the circumstances and the showing supported by a preponderance of the evidence. *See United States v. Figueroa-Alvarez,* 681 F.Supp.3d 1131 (D. Idaho 2023). Some courts consider the weight of the evidence against the defendant, the history and characteristics of the defendant, the nature and circumstances of the offense charged, and the nature and seriousness of the danger posed to any person or the community. *See United States v. Perez-Vasquez,* 779 F.Supp.3d 248, 256 (N.D.N.Y. 2025) (which are the same factors relevant under §3142(g)). Other courts consider a "more-nuanced approach," especially in immigration cases, including prior violations of supervised release, multiple prior unlawful entries into the United States, prior failures to appear in court, the possession or use of fraudulent documents, the potential punishment and weight of evidence, the incentive and/or ability to flee, ties to the jurisdiction and the United States, and the defendant's reliability or trustworthiness. *See id.* (internal citations omitted).

If a matter proceeds to hearing, some offenses qualify for a rebuttable presumption of detention. 18 U.S.C. §3142(e)(2) and (3). For others, the court must release a defendant unless it finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* at §3142(e)(1). In making this determination, the court must consider and take into account some of the same information already noted, including:

(1) The nature and circumstances of the offense charged;

(2) The weight of the evidence against the person;

(3) The history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceeds; and,

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* at §3142(g). Evidence of flight must be proven by a preponderance and evidence of danger must be clear and convincing. *Id.* at §3142(f)(2).

### 3. **Defendant Poses a Serious Risk of Flight**

Defendant is not charged with an offense giving rise to any presumption, so the preponderance of the evidence must show that he poses a serious risk of flight pursuant to §3142(f)(2)(A). Notably in most cases, a defendant asks the court to ignore an immigration detention order, arguing that it cannot be used as a basis for detention. Several courts have concluded that an immigration detainer should not be considered as a dispositive factor in determining whether or not the defendant poses a serious risk of flight under §3142(f)(2)(A). *See e.g., United States v. Lett*, 944 F.3d 467, 470 (2nd Cir. 2019); *see also United States v. Santos-Flores*, 794 F.3d 1088, 1091-92 (9th Cir. 2015). Defendant here asks the court to pay particular attention to the immigration detainer and to find it dispositive. Defendant argues that because of the detainer, he will certainly be transferred back into immigration custody if released and therefore cannot pose a serious risk of flight.  (Filing No. 105 at 5).

While there may be some initial logic to this thinking, it ignores the other factors and the totality of the circumstances the court must consider when making its initial determination. As noted, the immigration detainer is just one part, and some courts have concluded that it should have "little if any bearing" on the court's analysis. *See United States v. Peralta*, 2025 WL 2444151, *3-*4 (D. Kan. Aug. 25, 2025) (noting it was entirely uncertain what ICE may do). "As the entity with primary jurisdiction in this matter, the court [must] evaluate[] Defendant as he presents today and declines to speculate on what the future might hold." *Id.* It seems clear that this court may not abandon its independent obligation to evaluate issues raised under the Act solely because the executive branch has issued an immigration detainer. *See Perez-Vasquez*, 779 F.Supp.3d at 254-55 ("[N]either the [Bail Reform Act] nor the [Immigration and Nationality Act] precludes the government from exercising its detention authority pursuant to the other statute") (internal quotation omitted).

Based on a close review of the court filings, the Pretrial Services Report, and the Superseding Indictment here, the court finds the preponderance of the evidence shows Defendant poses a serious risk of flight. While not dispositive of these issues, the immigration detainer indicates that Defendant has significant ties to a foreign country and may be present in the United States unlawfully. More importantly, Defendant has little to no ties to this jurisdiction or to the United States. While Defendant may be correct that ICE may keep him in custody, the court cannot

speculate as to what immigration authorities may or may not do, regardless of what authority or statute ICE may be operating. This approach would again ask this court to abandon its independent obligation to evaluate these issues under the Bail Reform Act and to base its determination on the totality of the circumstances. Doing so could also cut both ways. "One reason for this majority rule (setting aside the uncertainty regarding whether U.S. Immigration and Customs Enforcement would act on the detainer) appears to be that the detainer may weigh as much in favor of finding an incentive to voluntarily flee to avoid apprehension or removal as it may weigh in favor of either improperly finding a risk of flight based on involuntary removal or improperly finding no need to detain defendant on the pending criminal charge because he would be removed [or detained] anyway." *Perez-Vasquez*, 779 F.Supp.3d at 255.

Considering the individual circumstances here, the court finds that the incentive to flee is significant. If convicted, Defendant faces up to thirty years of imprisonment on one charge and up to five years on the other. Defendant's apparent transiency also cannot be ignored, as his counsel noted he was working in Texas at one time and the court filings show he was arrested in Louisiana, where he made his first appearance. (Filing No. 72). There is no indication that Defendant has maintained any gainful employment in the region or has family or other community ties to the area. While there may be some question as to whether Defendant has the financial ability to flee, the allegations in the Superseding Indictment and as proffered by the Government allege Defendant and others engaged in a multistate conspiracy involving the theft of potentially millions of dollars from various banks and credit unions. The charging documents further allege that the participants may have personally profited from the scheme. The weight of the evidence is also considerable. This matter has been deemed complex and the court has already appointed a coordinating discovery attorney tasked with facilitating the production of significant volumes of discovery by the Government to defense counsel in this and other related matters. For these reasons, and as noted on the record, a detention hearing pursuant to §3142(f)(2)(A) was warranted as there is a serious risk of flight.

### 4. Detention Is Warranted Considering The §3142(g) Factors

After carefully considering the nature and circumstances of Defendant's alleged conduct, his history and characteristics, the information presented at the detention hearing, the other factors set forth under §3142(g), and available conditions of release under §3142(c), the court also finds

and concludes that Defendant must be detained pending trial. Some of these considerations have already been noted and the court finds the Government has proven, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure Defendant's appearance. The evidence is also clear and convincing that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

The nature of the alleged offenses is again serious, carrying a hefty potential penalty if convicted. As already noted, the weight of the evidence is also strong. It is unknown how long Defendant has been present in the United States. His criminal history does include reference to a prior immigration action for Alien Inadmissibility Under Section 212 in 2022, which was dismissed in 2024. While the court will not speculate as to what the matter entailed, it does indicate Defendant encountered border officials at that time. Whether he was deported or has been in the United States since then is unknown. Little else is known about Defendant's history and characteristics. The immigration detainer suggests that he has significant ties to a foreign country and very few ties to the community. It appears Defendant lacks legal status in the United States and he may be subject to removal or deportation after serving any period of incarceration. He also lacks a stable residence or employment as it appears he was working in Texas and was arrested in Louisiana.

As to the nature and seriousness of danger, the "concern about safety is to be given a broader construction than the mere danger of physical violence. Safety to the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *Peralta,* 2025 WL 2444151 at *3. Defendant is charged here with participating in a conspiracy spanning several years to steal potentially millions of dollars from numerous banks and credit unions, which if true, certainly impacts the community. The Government has proffered that the conspiracy in this matter may have targeted as many as 58 bank ATMs and an additional 44 credit union ATMs, resulting in a financial loss exceeding $6,000,000, and an additional $1,740,807.74 in attempted losses. (Filing No. 54). And based upon the sheer number of defendants indicted here and in other related matters, as well as the ongoing investigation and discovery production by the Government, the court cannot ignore the ongoing impact and potential danger to the community. While there is certainly no indication that Defendant has a violent criminal history or poses any physical danger, danger to the community should consider more. *See United States v. Alzoubi,*

6

2015 WL 3485432, *3 (S.D. Cal. June 1, 2015) (citing *United States v. Reynolds*, 956 F.2d 192, 192-93 (9th Cir. 1992) ("Danger to the community may include pecuniary or economic harm").

Accordingly, and for these reasons, IT IS ORDERED that the Government's motion for detention based upon both flight and danger are granted and Defendant's Motion for Release (Filing No. 105) is denied. Defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated this 17th day of July, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge